UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOEY ALLEN FRINKEL,

    Plaintiff,

    v.                                                                              CAUSE NO. 3:22-CV-753-JD-MGG

PULASKI COUNTY JAIL, et al.,

    Defendants.

OPINION AND ORDER

Joey Allen Frinkel, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Frinkel is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Frinkel is a pretrial detainee at the Pulaski County Jail. He claims that "the Pulaski County Jail and Quality Correctional Care refused to provide me proper medical care and failed to keep me safe and free from Covid 19." (ECF 1 at 2.)

Specifically, he alleges that there was a COVID-19 "outbreak" at the jail during August and September 2021. He was housed in E-Block, and at some point an inmate was transferred to that unit from another cell block. Mr. Frinkel claims the inmate had COVID-19, although he does not explain how he knew this. He claims he told the guards the inmate had COVID-19 but they "did not show any concern or care." Approximately three days later, all the inmates in E-Block were tested and the transferred inmate tested positive. Later that day Mr. Frinkel started to feel sick. After another three days everyone was tested again and 17 of the 20 inmates, including Mr. Frinkel, tested positive. He claims the E-Block was then locked down for 16 days. Based on these events, he sues the jail and Nurse Leann Witkowski for money damages.

Because Mr. Frinkel is a pretrial detainee, his claims must be analyzed under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Pretrial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). Nevertheless, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose[.]'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether a challenged

2

action is objectively unreasonable, courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021). "[N]egligent conduct does not offend the Due Process Clause," and allegations of negligence, even gross negligence, do not suffice. *Miranda*, 900 F.3d at 353.

Furthermore, the court must afford substantial deference to prison officials on matters that trigger safety and security concerns, including where best to house inmates within their custody. *Bell*, 441 U.S. at 547 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). As the Seventh Circuit has explained, "safety and security concerns play a significant role in a correctional administrator's housing decisions: jails and prisons require some degree of flexibility in choosing cell assignments, as they need to ensure, for example, that detainees are assigned to the living quarters corresponding with their security classifications and factoring in particular vulnerabilities that increase security risks." *Mays*, 974 F.3d at 819. "This is especially true at [a jail] where the population fluctuates daily given the number of bookings and releases that take place." *Id.*

Mr. Frinkel does not allege a plausible constitutional claim. Although he does not think the transferred inmate should have been placed in the E-Block, he does not provide factual content from which the court could plausibly infer that jail administrators knew the inmate had COVID-19 when they made the decision to house him there. He claims that he told two unnamed guards that the inmate had COVID-19,

but prison staff "are neither required nor expected to believe everything inmates tell them." *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). He does not allege that this inmate was showing visible symptoms, nor can the court plausibly infer from his very general allegations that he would have private information about another inmate's health status. His belief appears to be premised on the fact that the inmate came from another cell block where COVID-19 was prevalent, but the court cannot plausibly infer that jail administrators engaged in objectively unreasonable conduct simply by moving a detainee from one jail cell block to another. *See Mays*, 974 F.3d at 819.

It can also be discerned from the complaint that jail staff was taking steps to try to prevent the spread of COVID-19, including testing detainees for the disease and limiting their movements once there was a positive test result in the E-block. The fact that jail staff chose to keep the transferred inmate in E-block, rather than moving him to another area of the jail and risking infecting another group of inmates, cannot be considered objectively unreasonable or unrelated to legitimate penological interests. *See Grimes v. Dane Cty. Jail*, No. 21-CV-685-JDP, 2022 WL 136801, at *2 (W.D. Wis. Jan. 14, 2022) (inmate did not state due process claim in connection with jail's COVID-19 quarantine procedures). Indeed, how best to manage the spread of COVID-19 within a correctional facility in light of security concerns is a difficult question, one on which prison staff are entitled to deference. *Mays*, 794 F.3d at 820-21. The circumstances he describes might rise to the level of negligence, but allegations of negligence—even gross negligence—are not enough to state a federal due process claim. *Miranda*, 900 F.3d at

4

353–54; *see also Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) ("[T]he mere failure . . . to choose the best course of action does not amount to a constitutional violation.").

Aside from this problem, the only defendants he names are the jail and Nurse Witkowski. The jail is a building, not a "person" or policy-making body that can be sued for constitutional violations under 42 U.S.C. § 1983. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). As for Nurse Witkowski, there is nothing in the complaint from which the court can plausibly infer that she made the decision to move the inmate to E-block. To the extent he is trying to hold her liable for the denial of medical care, to state a claim for the denial of medical care under the Fourteenth Amendment, an inmate must allege: "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's]s medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (citation and internal quotation marks omitted).

Mr. Frinkel's allegations about Nurse Witkowski are quite general and he does not include any details about what actions she took, or failed to take, with respect to his medical care. Nor does he include any details about how long he was ill or what medical treatment he needed. His most specific allegation about Nurse Witkowski is that she was not wearing a mask on some occasion, but negligence or failing to take the best course of action does not amount to a constitutional violation. *Miranda*, 900 F.3d at

5

353–54; *Peate*, 294 F.3d at 882. The court cannot plausibly infer from his very general allegations that Nurse Witkowski engaged in a volitional act concerning his medical care that was objectively unreasonable under the circumstances.

It is also evident from the complaint that Nurse Witkowski was taking steps to protect inmates from COVID-19 by testing them for the disease, and after there was a positive test result the E-block was quarantined. It is unfortunate that Mr. Frinkel became ill, but during this period thousands of individuals, both inside and outside of the correctional setting, became infected with COVID-19. *See Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic . . . . People, both inside and outside prisons and jails, are contracting COVID-19[.]"). He has not stated a plausible Fourteenth Amendment claim against Nurse Witkowski.

Therefore, the complaint does not state a claim upon which relief can be granted. In the interest of justice, the court will allow Mr. Frinkel an opportunity to amend his complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim in connection with these events, consistent with the allegations he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **October 18, 2022**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED on September 16, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT